# Richmond

GILMER MEADE v. COMMONWEALTH OF VIRGINIA.

January 13, 1941.

Record No. 2350.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

E. *Ray Hauk* (Kingsport, Tennessee) and *S. H. Bond,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On the evening of Sunday, February 4, 1940, as dark was setting in, an automobile on a public highway in Scott county, leading from Moccasin Gap to Bristol by way of Hiltons, struck and killed Mrs. Martha Hyatt Prigon. With her, walking in single file, in this order were the husband, Mrs. Prigon and Miss May Rimer. Mrs. Prigon carried a flashlight and was on the road shoulder about three feet to her right from its paved

surface. About weather conditions witnesses differ, as witnesses will. One said that it was snowing "just a little" or "kinda medium;" another said that it "commenced snowing—just peppering snow," and another said that it was heavy enough to make vision through the windshield impossible. The defendant himself said: "Well, it was snowing. I would be safe in saying I wasn't making over twenty-five and sometimes not that much. It was snowing and I was taking my time."

The automobile which did the damage was a Ford Coupe, and of course single-seated, bore a Kentucky license and was driven by the defendant, Gilmer Meade. With him, according to a witness, Lewis Wilson, was R. W. Meade, Gilmer's brother. Meade said that he was not in the car at the time of the accident but that the third passenger was Howard Turner; and that also is Turner's statement.

Wilson had been driving and had driven into a ditch. Gilmer said that he was "too high to drive" and took over the wheel with Wilson's consent.

On the afternoon of that day Gilmer Meade, R. W. Meade, A. Meade, Kelly Katron and Howard Turner, all from Tennessee, in two cars came from that State to Virginia, on pleasure bent, and were drinking. It satisfactorily appears that Wilson was too much under the influence of liquor to drive with safety. Gilmer was sober, probably the only one of the party who was entirely so. This is Wilson's evidence of what occurred on that occasion:

"Q. Go ahead and tell what you remember.

"A. We hit something and it jarred and I told them it hit something.

"Q. How was that?

"A. I told them it hit something, and I told them to stop and R. W. said 'keep driving.'

"Q. What did Gilmer Meade say?

"A. Nothing.

"Q. Did you keep on going?

"A. Until we ran out of gas."

He further said:

"Q. Where did you see him?

"A. I saw him the next day. He was moving somebody.

"Q. What did he say to you?

"A. He told me not to say anything. 'He had killed that woman.'

"Q. Did you say anything else?

"A. We didn't talk much about that."

And later: "When I let R. W. Meade out of my car on Sullivan street he said: 'If they arrest my brother, I will kill you.' "

Gilmer said that he struck nothing and if he had he would have stopped. He denied threatening Wilson or even talking to him. R. W. Meade, who claimed not to have been in the car at all, denied having made any threats.

These pedestrians, as we have seen, were walking Indian file along the shoulder of the road. Prigon, the husband, said that the car which "hit my wife pulled back on the road and dimmed his lights." Miss Rimer was asked: "Q. Where was that car with reference to the road at the time he struck her? A. It come straight across the road seemed to me like. It passed me—come in front of me. Q. Do you mean it come across the road? A. Seemed to me like it come across and hit."

W. L. Holmes, who arrested Gilmer, said that he examined the Ford Coupe on the Thursday following this accident. He found on its left fender a dent about as big as his hand and a drop of blood on the glass of the left door, near the top.

Davidson, another policeman, examined the car on the preceding day and said that its left front fender had been cleaned off and that the others were dirty. Some hair

was found caught on the car, which Mr. Prigon said from its color appeared to be his wife's.

■ Objection was made to the admissibility of evidence as to the car's condition on the ground that it was not the best evidence. This matter is considered by Professor Wigmore in some detail. Wigmore on Evidence, 2d Ed., secs. 1179-1183. He said:

"An important question is whether the rule is restricted to writings, or whether it includes also other chattels or material objects. It is necessary, for ascertaining this, first to examine the reasons of policy that have been put forward for the rule in general."

This is the conclusion which he reaches:

"For these reasons, it is entirely proper that a rule of such strictness should not be applied so broadly as to require the production of anything but writings; and such is the accepted doctrine."

Many cases on this subject are cited by the author and certainly some of them cannot be reconciled. But it is everyday practice in this State to admit in evidence photographs of automobile collisions, and witnesses are permitted to testify as to defects in cars which brought about the accident. Moreover, in time this bloodstain would wear away and a fender freshly cleaned might again be covered with mud and dust, while a bent fender might be straightened or replaced. Indeed, blood-stained articles brought into evidence are sometimes too dramatic in their effect.

■ Verdicts settle conflicts. Evidence heretofore noted, introduced on behalf of the Commonwealth, is not incredible. A jury has accepted it, and their verdict has been approved by a judge able and of wide experience. We, too, must accept it.

The indictment is in two counts. The first, in short form, is one for murder; the second is under what is commonly known as the "hit-and-run" statute. Code, section 2154 (104).

No instructions were tendered by counsel, but it was agreed that the court might instruct the jury orally,

which it did, and to its instructions no objections were then made.

After the jury returned its verdict, counsel for the accused moved that it be set aside, assigning, among other reasons, this:

"(c) Because the verdict of the jury failed to show and designate which count in the indictment the defendant was found guilty on—whether one or both, but the court overruled the motion and pronounced sentence upon the defendant, to which the defendant by counsel excepted and prays that this his bill of exception be signed, sealed and made a part of the record which is accordingly done."

■ It came too late. It is true that this stipulation was entered into by counsel for the Commonwealth and the defendant:

" * * * and that all questions raised, all rulings thereon, all exceptions thereto, and the grounds of such exceptions, respectively, as shown by said report of testimony, and other incidents of the trial there, may be relied upon by either or both parties, in the Supreme Court of Appeals, without taking separate Bills of Exception as to each point raised and excepted to."

No questions were raised as to these instructions, and there was no ruling on them; there is no incident which questioned them and which occurred during the progress of the trial. If given the broad construction counsel would now place upon this stipulation it does away with Rule XXII, and that is not to be desired.

It is bad for other reasons.

On the back of the indictment is this endorsement:

"Indictment for Involuntary Manslaughter, and 'Hit and Run.'"

The verdict itself reads:

"We, the jury, find the defendant, Gilmer Meade, guilty as charged in the within indictment and fix his punishment at four (4) years in the State penitentiary."

■ It is manifest from the record that there was no attempt made to convict the defendant of murder.

Throughout the record it is plain that the "hit-and-run" statute was relied upon, although it is true that the same punishment might have been assessed under the murder charge. No election was asked for and no bill of particulars was requested. The accused could not have been confused or embarrassed in the preparation of his defense. He was charged with striking a pedestrian on a highway and nothing more. That incident was dealt with and that was all. *Dowdy* v. *Commonwealth*, 9 Gratt. (50 Va.) 727, 60 Am. Dec. 314.

*Hitt* v. *Commonwealth*, 131 Va. 752, 109 S. E. 597, is a case involving the violation of the State Prohibition Act, and in its consideration we have been slow to reverse cases for technical reasons alone.

In his opinion Kelly, P., adopts with approval this statement of general law:

"It is said that the verdict ought to have been set aside because it was fatally defective in form. The contention here is that as the indictment charged a number of offenses it is impossible to say from the verdict for which one the defendant was convicted, and hence he might be subjected to a future prosecution for the very same offense for which the jury found him guilty. This position is not tenable. A general verdict of guilty upon an indictment charging several offenses will protect a defendant from a subsequent prosecution for any thereof. 22 Ency. Pl. & Pr., p. 845."

*Kelley* v. *Commonwealth*, 140 Va. 522, 125 S. E. 437, is also a prohibition case. There were several charges in an indictment. Sims, P., speaking for the court, said:

"The verdict being a general verdict, it was, in contemplation of law, either a verdict finding the accused guilty of all three of the offenses upon the charges of which she was tried, or guilty of one or more of such offenses and not guilty as to the others. And the judgment having been entered in accordance with the verdict was, in contemplation of law, a judgment convicting the accused of all three of such offenses, or of one or more of them and acquitting her of the others."

In *Moody* v. *State,* 1 W. Va. 337, it was held that a verdict of "guilty as charged in the indictment" is good although the indictment contained more than one count.

For reasons heretofore noted, we are of opinion that there is no error in the record and that the judgment of the court below should be affirmed.

*Affirmed.*