COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Clements
Argued at Salem, Virginia


JOHN EUGENE SOWERS, JR.
                                                          OPINION BY
v.        Record No. 2233-05-3            JUDGE JAMES W. BENTON, JR.
                                                          APRIL 24, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Sidney H. Kirstein for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General; Josephine F. Whalen, Assistant
Attorney General, on brief), for appellee.


        John Eugene Sowers, Jr., appeals his conviction for possession of cocaine with the intent to

distribute.  Sowers contends the trial judge erred in refusing his pre-trial motion to suppress

evidence found in his residence pursuant to a search warrant.  We hold that the trial judge did not err

in applying the good faith exception of United States v. Leon, 468 U.S. 897 (1984), and, thus, we

affirm the conviction.

                                                    I.

        Under well-established principles, when reviewing the trial judge's denial of a motion to

suppress evidence, we must consider the evidence in the light most favorable to the

Commonwealth, the prevailing party at trial.  See Jackson v. Commonwealth, 267 Va. 666, 672,

594 S.E.2d 595, 598 (2004).  So viewed, the evidence proved that on September 25, 2004, police

officers stopped John Eugene Sowers, Jr., for driving in the City of Lynchburg while his driver's

license was suspended.  After a trained dog alerted to the car Sowers was driving, the police

searched the car and found a plastic bag of white substance on the floorboard at the driver's seat. The police tested the substance and then arrested Sowers for possession of cocaine. They also found a cell phone and $1,263 in cash, and, during a later search of the car, they found another bag of cocaine hidden in a cigarette package.

At the police station, the police advised Sowers of his <u>Miranda</u> rights. Officer Riley testified Sowers said "the cocaine wasn't his" and Sowers explained the cocaine must have been left in his car by a friend who borrowed the car a week earlier. Sowers also said that "he did see the cocaine when he got in the car . . . and that he should have moved it." In addition, Sowers told the officer "he was coming from his residence" when the police stopped him and had "smoked marijuana at his house . . . in the past."

Officer Riley submitted an affidavit for a warrant to search Sowers's residence for "Cocaine, U.S. Currency and paraphernalia associated with the distribution of Cocaine, and any fruits associated with the distribution of Cocaine, marijuana." In support of the request, the affidavit recited the following:

> On 9-24-04 at approx. 2135 hrs., I assisted in a traffic stop . . . in the City of Lynchburg for a traffic infraction. (Driving Suspended). Ofc. R. Zuidema made the traffic stop and made contact with the driver, a John E. Sowers Jr. Ofc. Zuidema had his canine run the veh. and it alerted on the drivers side door of the veh. I began to search the veh. and immediately found a small bag of white powder which tested positive for Cocaine. A cell phone was found on the floorboard of the veh. and $53.00 in currency was found in the center console. A search of his person revealed $900.00 in currency from his wallet and $310.00 in currency from his front pocket. A second bag of white powder was found in the drivers door of the veh. by Ofc. M.R. Soyars. This affiant interviewed Mr. Sowers (after reading Miranda) and Sowers advised me that he did not use Cocaine and that he left his residence . . . and was heading to Amherst Cty Mr. Sowers also stated that he had used Marijuana at this residence also in the past.

> It is this affiants experience that Marijuana and Cocaine can easily be hidden inside of a residence. It is also this affiants experience that persons involved in using and Distributing

narcotics will not always take everything they have with them when they travel. It is also this affiants experience that narcotics and the paraphernalia Associated with the use of Narcotics are often hidden inside the user's residence for safe keeping.

Officer Riley testified that "[t]he magistrate read the affidavit thoroughly and then went ahead and started filling out the paperwork." After the magistrate issued the search warrant, Officer Riley informed Sowers they had obtained a warrant to search his house. He testified Sowers then said he had "five or six grams" of drugs in his kitchen and some marijuana on his couch. Sowers also admitted that he had sold cocaine for three to four months. Sowers then gave the officer the keys to his residence and identified the lock each key opened.

When executing the search warrant, police seized a plastic bag of marijuana, a plastic bag of cocaine, two digital scales, a box of plastic sandwich bags, a marijuana cigarette, and a box of baking soda. After the police seized these items, they obtained a warrant to arrest Sowers for possession of cocaine with intent to distribute.

At trial, Sowers argued that the facts in the affidavit did not provide probable cause to issue a search warrant and were so lacking in probable cause that the good faith exception did not apply. The trial judge denied the motion, ruling probable cause existed and, alternatively, ruling the magistrate did not abandon his judicial role and the officer relied upon the warrant in good faith. At the conclusion of the evidence, the trial judge convicted Sowers of possession of narcotics with the intent to distribute and denied his request for post-conviction bail, finding him "a danger to himself and to the community."[1]

---

[1] Sowers initially appealed the trial court's denial of his request for bail. A panel of judges of this Court denied that appeal. Now he asks this Court to reconsider that appeal, to issue him a "*supersedeas* bond," and to release him from incarceration. This Court only exercises appellate jurisdiction on bail issues. See Code § 19.2-319 (allowing the court that issued judgment to postpone the execution of the sentence and to consider bail, if the defendant seeks an appeal); Commonwealth v. Smith, 230 Va. 354, 337 S.E.2d 278 (1985); Askew v. Commonwealth, 49 Va. App. 127, 638 S.E.2d 118 (2006). In any event, the request has become immaterial because we affirm this conviction.

II.

In view of the significant disputes about whether the search warrant was based upon probable cause and whether the officer could have relied upon the magistrate's decision to issue the search warrant, we conclude we must first address the probable cause issue. We do so because, if police officers are to "harbor an objectively reasonable belief in the existence of probable cause," Leon, 468 U.S. at 926, they and magistrates must be informed about the individualized and fact-specific inquiry of probable cause. Wong Sun v. United States, 371 U.S. 471, 479 (1963).

> If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice.

Leon, 468 U.S. at 925 (footnote omitted); see also Illinois v. Gates, 462 U.S. 213, 239 (1983) (noting that to ensure the magistrate's action is not "a mere ratification of the bare conclusions of others . . . , courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued").

Probable Cause

Sowers contends the search warrant is invalid because the affidavit supporting it failed to provide specific facts connecting the drugs to his home. He further contends the Leon good faith exception does not apply because the magistrate abandoned his judicial role and the warrant was

based on an affidavit so lacking in indicia of probable cause that any official belief in its existence was unreasonable. The Commonwealth responds that the affidavit established probable cause due to the evidence of drug distribution found in the car and the police officer's knowledge of where drug distributors stow their supply. The Commonwealth alternatively contends that the good faith exception applies.

The Fourth Amendment of the United States Constitution requires that a search warrant be based upon probable cause. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a particular crime will be found in a particular place." Gates, 462 U.S. at 238. This determination of probable cause must be based on objective facts, United States v. Ross, 456 U.S. 798, 808 (1982), and reasonable inferences drawn from those facts. Gates, 462 U.S. at 240.

As the appellant, Sowers bears the burden of showing that the trial judge's denial of his motion to suppress evidence seized pursuant to a search warrant constituted reversible error. Anzualda v. Commonwealth, 44 Va. App. 764, 774, 607 S.E.2d 749, 754 (2005) (en banc). On review, we must determine whether "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). In considering this issue, we "must grant 'great deference' to the magistrate's interpretation of the predicate facts supporting the issuance . . . and to the determination of whether probable cause supported the warrant." Janis v. Commonwealth, 22 Va. App. 646, 652, 472 S.E.2d 649, 652 (1996).

For a search warrant to be supported by probable cause, "the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe

that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). An affidavit must provide a nexus between the contraband sought and the place to be searched pursuant to the warrant. Janis, 22 Va. App. at 652, 472 S.E.2d at 652. Thus, to support probable cause for a warrant to search a residence, an affidavit must establish, with a fair probability, a link between contraband and the residence to be searched.

In the present case, the affidavit alleged several pertinent facts: Sowers had an unspecified amount of cocaine in two bags in his car, a cell phone, and $1,263 in currency. It asserted Sowers said he left his residence, did not use cocaine, and had used marijuana at his residence in the past. The affidavit also alleged that the warrant was requested to search for cocaine and paraphernalia associated with the distribution of cocaine, indicating that in the officer's experience "persons involved in using and distributing narcotics" keep items associated with those activities in the residence.

Sowers contends the magistrate erroneously relied upon the officer's training and experience. While a magistrate may consider a police officer's statement of experience, it is not sufficient by itself to provide a basis for probable cause. The officer's statements of experience set forth generalizations about the behavior of drug users and distributors, rather than specific facts. See Cunningham v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (April 24, 2007); see also United States v. Feliz, 20 F. Supp. 2d 97, 102 (D. Me. 1998); United States v. Rosario, 918 F. Supp. 524, 531 (D.R.I. 1996). A *factual* nexus must connect the illegal activity to the place to be searched; otherwise police would have unfettered discretion to avow that criminals often keep contraband at home and then search the home of every suspect. See Gwinn v. Commonwealth, 16 Va. App. 972, 975, 439 S.E.2d 901, 903 (1993) (stating that probable cause must be based on "objective facts and reasonable inferences drawn therefrom"); see also

United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994) ("While an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus." (citations omitted)); Feliz, 20 F. Supp. 2d at 103 (holding that "more of a factual predicate than a law enforcement officer's expert opinion is required to establish the necessary nexus for a finding of probable cause to search a defendant's home"); Rosario, 918 F. Supp. at 531 ("To permit a search warrant based solely upon the self-avowed expertise of a law enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect."); United States v. Gomez, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) ("[W]here as here, there is nothing to connect the illegal activities with the arrested person's apartment, to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses.").

The government argues, however, the magistrate could reasonably infer from the facts in the affidavit that Sowers "was engaged in the sale of illicit drugs and that evidence of such criminal activity would probably be found in his home." As demonstrated by Gwinn, we have held that this inference can be permissibly drawn in some cases and provide the necessary factual nexus between the crime and place to be searched. In Gwinn, the police observed seven drug transactions where a drug seller went to Gwinn's store, returned with the cocaine, and went back to the store after the sale. 16 Va. App. at 974, 434 S.E.2d at 903. Shortly before several of those transactions, Gwinn's automobile arrived at the store from Gwinn's residence. Gwinn was present at the store for several of these occasions, and one time he and the seller left the store simultaneously in different automobiles and met at a separate location. Id. We recognized that "[a] magistrate is entitled to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of the offense." Id. at

- 7 -

975-76, 434 S.E.2d at 904. Thus, we concluded that the magistrate was entitled to infer from the evidence that Gwinn was supplying the seller with cocaine and to further infer "the probability that drugs . . . or other evidence of Gwinn's suspected drug-related activity would be found in his residence." Id. at 976, 434 S.E.2d at 904.

In Anzualda, 44 Va. App. 764, 607 S.E.2d 749, where the evidence did not show a pattern of transactions, the plurality opinion reached a different conclusion. There, the police obtained a warrant to search Anzualda's residence for a gun, which they suspected was a murder weapon in another case and which they had been told was traded to Anzualda for marijuana. Id. at 771, 607 S.E.2d at 752. We held in a plurality opinion that the affidavit "fail[ed] to provide a sufficient nexus between the item sought (the pistol) and the premises to be searched." Id. at 777, 607 S.E.2d at 755. We noted, however, that generally evidence is likely to be found where "drug dealers" live, but that the affidavit for Anzualda's residence only contained an account of an isolated drug transaction and did not suggest that Anzualda was a known drug dealer. Id. at 777-78, 607 S.E.2d at 755-56; see also Lalor, 996 F.2d at 1579-83 (holding that the affidavit in support of the warrant lacked probable cause even though it included facts indicating Lalor sold cocaine regularly, because it did not "describe circumstances that indicate[d] such evidence was likely to be stored at Lalor's residence").

Thus, evidence of a single drug transaction does not by itself raise the inference that the suspect has evidence of illegal drug activity at home. See also Cunningham, ___ Va. App. at ___, ___ S.E.2d at ___ (evidence only of one instance of possession of marijuana did not support probable cause to search Cunningham's residence). In contrast, evidence that a person is engaged in an ongoing drug scheme or conducting multiple drug sales can permissibly raise the inference that the person keeps evidence of that illicit business in his or her residence. This distinction logically arises from the differences between a continuous drug scheme and an

isolated drug transaction. An individual engaging in multiple drug sales is far more likely to possess and store the typical "tools of the trade," such as customer lists, sales records, weapons, and large quantities of drugs. See generally State v. O'Keefe, 141 P.3d 1147, 1157-58 (Idaho 2006) (listing items associated with the drug trade and affirming the inference that O'Keefe had evidence of his drug business in his residence because the application for the warrant revealed a large-scale, sophisticated narcotics operation).

In this case, the affidavit did not assert that Sowers had sold cocaine and did not specifically allege that he possessed the cocaine with the intent to distribute. The affidavit contained some facts, however, supporting the inference that Sowers possessed the cocaine with the intent to distribute. The facts in the affidavit supporting the inference of intent to distribute were Sowers's possession of the cocaine in conjunction with his possession of $1,263 in currency and a mobile phone, and his statement that he did not use cocaine.[2] See Askew v. Commonwealth, 40 Va. App. 104, 108-11, 578 S.E.2d 58, 60-62 (2003) (listing circumstances that may support a trier of fact's finding of intent to distribute, including possession of cash and equipment such as pagers and the suspect's lack of drug use). Unlike Gwinn, the affidavit did not provide facts connecting Sowers to multiple drug transactions. 16 Va. App. at 974, 434 S.E.2d at 903. The affidavit did not contain information suggesting that Sowers was a repeat or experienced drug dealer. See United States v. Hodge, 246 F.3d 301, 306 (3rd Cir. 2001) (allowing the search warrant to stand where an informant's foreknowledge of Hodge's drug delivery, use of a rental car, and transportation of the drugs "in the front of his pants as is common to avoid detection" all suggested that "Hodge was an experienced and repeat drug

---

[2] We note that the officer's testimony differed from the affidavit to the extent that he testified that Sowers completely denied ownership of the cocaine, not that Sowers directly disclaimed use of the drug as asserted in the affidavit. However, Sowers did not challenge this discrepancy in the affidavit at trial under Franks v. Delaware, 438 U.S. 154 (1978), nor does he make an argument under Franks on appeal.

dealer who would need to store evidence of his illicit activities somewhere"); United States v. Williams, 974 F.2d 480, 480-81 (4th Cir. 1992) (where Williams was wanted in Maryland for possession with intent to distribute, he had seven prior drug-related arrests, the police considered him "to be a major importer of liquid phencyclidine and marijuana," and he used aliases and alternative social security numbers). As in Anzualda, the affidavit in this case did not connect Sowers to more than a single drug transaction. 44 Va. App. 777-78, 607 S.E.2d at 755-56.

Furthermore, the affidavit did not provide a timeframe for Sowers's past use of marijuana at his residence. Probable cause may be diminished by the passage of time between when the supporting facts occurred and when the police issue the affidavit. Anzualda, 44 Va. App. at 776, 607 S.E.2d at 755. As we noted, an appellate court "'must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized.'" Id. (quoting Perez v. Commonwealth, 25 Va. App. 137, 142, 486 S.E.2d 578, 581 (1997)). "[A] warrant will be tested for 'staleness' by considering whether the facts alleged in the warrant provided probable cause to believe, at the time the search actually was conducted, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity." Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000). This affidavit did not provide probable cause to search for marijuana because it failed to provide a temporal context for the marijuana use.

Accordingly, we conclude the totality of the circumstances presented in the affidavit did not provide a substantial basis to conclude that the search would "uncover evidence of wrongdoing." Gates, 462 U.S. at 236. This conclusion, however, does not resolve the issue of whether the trial judge erred in refusing the motion to suppress, because we must now address whether the Leon good faith exception to the exclusionary rule applies.

- 10 -

The Good Faith Exception

"In Leon, the United States Supreme Court held that 'suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.'" Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998) (quoting Leon, 468 U.S. at 918). The United States Supreme Court reasoned as follows:

> [T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.
>
> \*   \*   \*   \*   \*   \*   \*
>
> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

Leon, 468 U.S. at 916, 921. Under the good faith exception, "[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded." Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000)).

There are four circumstances where an officer cannot have an objectively reasonable belief that probable cause exists for the search and suppression is an appropriate remedy:

> "(1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

Id. at 811, 531 S.E.2d at 33 (quoting Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990)); see also Leon, 468 U.S. at 923.

- 11 -

Sowers contends the Leon exception does not apply to this affidavit because it is "bare bones" and because, he argues, the magistrate abandoned his judicial rule when acting on the officer's affidavit. We disagree.

As the Supreme Court noted in Leon, "'[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'" 468 U.S. at 915 (quoting Gates, 462 U.S. at 239). In other words, an affidavit that is devoid of material facts and sets forth only conclusory allegations is "bare bones" and insufficient to support probable cause. Id. The affidavit in this case, however, contained facts indicating Sowers possessed cocaine, had a large sum of money, and denied he was a user of cocaine. Our cases indicate these facts could support inferences about his intent. See, e.g., Askew, 40 Va. App. at 108-09, 578 S.E.2d at 60-61 (citing cases). Therefore, we cannot say this was a "bare bones" affidavit.

Furthermore, the record contained no evidence that the magistrate did not "purport to 'perform his "neutral and detached" function and . . . serve[d] merely as a rubber stamp for the police.'" Leon, 468 U.S. at 914 (quoting Aguilar v. Texas, 378 U.S. 108, 111 (1964)). A showing that the magistrate abandoned the role of a neutral and detached judicial officer requires more than inadequacy of the affidavit. United States v. McKneely, 6 F.3d 1447, 1456 (10th Cir. 1993) (citing cases from the Seventh and Eight Judicial Circuits that also rejected that proposition). Indeed, in this case, the officer-affiant testified that the magistrate "read the affidavit thoroughly," which indicates that he considered the merits of the affidavit rather than blindly issuing the warrant.

Sowers also argues this is an instance where the police officer does not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468

- 12 -

U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 591, 610-11 (1975) (Powell, J., concurring in part)). We have held, however, that "as long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception [provided that] a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed the warrant was valid." Anzualda, 44 Va. App. at 781, 607 S.E.2d at 757. For the good faith rule to apply, the affidavit must provide some nexus between the evidence sought and the place to be searched. Janis, 22 Va. App. at 653-54, 472 S.E.2d at 653.

The pivotal question for the good faith exception analysis is whether a reasonable police officer could have believed the warrant was valid based on the facts in the affidavit. As we have noted above, the affidavit is not a "bare bones" affidavit setting forth only conclusory allegations without supporting facts. Even though the affidavit failed to provide a sufficient nexus between the drugs and Sowers's residence to support probable cause, it provided *some* nexus. See Anzualda, 44 Va. App. at 785-86, 607 S.E.2d at 759-60 (contrasting Janis, 22 Va. App. 646, 472 S.E.2d 649). In view of our case decisions, the affidavit contained some facts that could lead to the inference that Sowers was in the business of selling drugs. See Askew, 40 Va. App. at 108-09, 578 S.E.2d at 60-61 (citing cases noting circumstances that can give rise to an inference of intent to distribute narcotics). The affidavit described the items sought and the place to be searched. Under these circumstances, a reasonable police officer could have believed the warrant was valid. Thus, the affidavit was not so lacking in probable cause as to render official belief in the warrant objectively unreasonable, and the good faith exception prevents application of the exclusionary rule.

For these reasons, we hold the trial judge did not err in holding that the Leon good faith exception applied, and we affirm the conviction.

Affirmed.