COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Clements
Argued at Alexandria, Virginia


MARC JOSEPH STOUT

MEMORANDUM OPINION[*] BY
v.       Record No. 0227-08-4          JUDGE JEAN HARRISON CLEMENTS
OCTOBER 20, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Lon E. Farris, Judge

Barry A. Zweig (Zweig & Associates, PC, on briefs), for appellant.

Richard B. Smith, Special Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Upon conditional guilty pleas, Marc Joseph Stout (appellant) was convicted of two charges

of possessing cocaine with the intent to distribute in violation of Code § 18.2-248, possessing a

controlled substance simultaneously with a firearm in violation of Code § 18.2-308.4, and

possessing a firearm after conviction of a felony in violation of Code § 18.2-308.2.  On appeal,

appellant contends the trial court erred in denying his motions to suppress evidence:  1) obtained

by the police after he was seized in violation of his Fourth Amendment rights; 2) seized from his

motel room pursuant to a search warrant; 3) seized from a safety deposit box pursuant to a search

warrant; and 4) obtained by the police through search warrants in violation of Franks v.

Delaware, 438 U.S. 154 (1978).[1]  We hold the trial court erred in concluding the police lawfully

detained appellant and in refusing to suppress a portion of the evidence.  For the reasons that

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge William D. Hamblen denied appellant's motion to suppress evidence derived
from his alleged unlawful detention.  Judge Richard B. Potter denied appellant's motions to

follow, however, we hold the trial court did not err in denying appellant's motions to suppress evidence seized pursuant to the search warrants.

As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

BACKGROUND

"[I]n considering a trial court's ruling on a suppression motion, we view the evidence in the 'light most favorable to . . . the prevailing party below,' the Commonwealth in this instance, and the decision of the trial judge will be disturbed only if plainly wrong." Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (quoting Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). "'[T]he burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

On the night of September 23, 2006, Detective Michael Fernald of the Prince William County police received an anonymous tip that a Caucasian male and a Caucasian female were staying at a room at the Best Value Inn, and they possessed narcotics and firearms. The tipster told Fernald the two individuals were traveling in a gray Nissan Altima with large chrome wheels. The tipster further advised there was a baby in the subjects' motel room. Fernald was in the process of

---

suppress the evidence obtained by search warrants. Judge LeRoy F. Millette, Jr., ruled on appellant's motion to suppress pursuant to Franks and accepted his conditional guilty pleas. Judge Lon E. Farris sentenced appellant.

interrogating a suspect in the jail when he received the tip. As a result, Fernald passed along the information to Detective Michael Sullivan, who was on duty with Officer Wayne Smith.

Sullivan and Smith drove to the Best Value Inn. They saw Misbah Ferozpuri, a female, and appellant, a Caucasian male, entering a gray Nissan Altima with large chrome wheels. Ferozpuri drove the vehicle, and appellant was the front seat passenger. By telephone, Sullivan contacted Fernald and asked whether the suspects were reported to make drug sales at the motel room or in other locations. Fernald advised that the drug sales took place away from the couple's motel room. Sullivan decided to follow the Altima.

Sullivan and Smith followed the vehicle from the Best Value Inn to the parking lot of the Super 8 Motel. The Altima backed into a parking space and remained there for several minutes. Ferozpuri and appellant did not get out of the vehicle.

Sullivan and Smith exited their vehicle and approached the Altima. Sullivan walked toward the vehicle from the left front passenger side, and Smith approached the vehicle from another direction. Sullivan was wearing a black vest with "police" in white lettering. Sullivan "gave a little wave" and Ferozpuri waved back as the officers neared the car. Sullivan walked to the passenger side of the car and spoke to appellant through the opened window.

When Sullivan asked appellant what he was doing there, he replied he was waiting for a friend. Appellant said he had come from his house, and he was living at the Best Value Inn. Sullivan then asked if appellant would exit the vehicle. Appellant questioned why Sullivan wanted him to do so. The officer replied he did not want to discuss it in front of Ferozpuri, but would talk to appellant privately at the rear of the vehicle. Appellant opened the door, and Sullivan moved toward the rear of the vehicle.

As appellant was exiting the vehicle, Sullivan saw a black gun on the right front floorboard of the car. Immediately upon observing the firearm Sullivan pinned appellant to the

vehicle and handcuffed him. Searching appellant incident to arrest for possessing a concealed firearm, Sullivan found $871 in currency in appellant's left front pocket. Sullivan then searched the vehicle and found three pieces of crack cocaine.

At the suppression hearing, appellant testified that he and Ferozpuri remained in the parked vehicle for only about thirty seconds before the officers approached. Appellant said Sullivan "motioned for [him] to stay put." Likewise, Ferozpuri interpreted Sullivan's gesture as a signal not to leave. Appellant stated that when Sullivan asked him to get out of the car, he did not feel free to leave. Appellant said the officer held him against the car and handcuffed him after he bent down to pick up his sunglasses.

Following appellant's arrest, the police questioned him and Ferozpuri at the police station. Ferozpuri indicated there were guns and drugs in their motel room at the Best Value Inn. The police confirmed that appellant was the guest registered in Room 232 at the motel. The police then obtained a search warrant for Room 232 and searched it in the early morning hours of September 24, 2006. The search revealed $3,500 in cash, drugs, drug paraphernalia, and firearms.

On September 26, 2006, the police sought a search warrant for "safety deposit box number 91" at a Wachovia Bank branch in Dale City.[2] The affidavit for the search warrant described the findings by police during the search of Room 232. The affidavit further indicated appellant, after his arrest, told the police he had been unemployed for months and supported himself by selling drugs. Appellant offered one of the officers $20,000 to "get [him] out of this

---

[2] At appellant's trial, where he entered conditional guilty pleas, the Commonwealth indicated that following appellant's arrest, the police found a key to a safety deposit box "in [appellant's] belongings." The record does not reveal where the key was found. The police traced the key to the Wachovia Bank safety deposit box registered to appellant and Ferozpuri. These facts and circumstances were not included in the affidavit for the search warrant of the safety deposit box.

mess." Based upon this information, the police obtained a search warrant for the safety deposit box. The search of the box revealed $5,000 in cash.

Mark Crossland initially was appointed to represent appellant upon the charges. While appellant was incarcerated awaiting trial, he wrote a letter admitting he was solely responsible for the drugs and money in the car, the motel room, and the safety deposit box. Appellant stated in the letter that neither Ferozpuri nor his brother, who was with appellant's child at the motel room at the time of appellant's encounter with the police, was involved in selling drugs. At appellant's encouragement, Crossland released appellant's letter of confession to the attorneys representing Ferozpuri and appellant's brother and to the prosecutor during plea negotiations.

ANALYSIS

I.

A. The Detention

Appellant contends all the evidence should have been suppressed because the police officers obtained it as a result of a detention that violated his Fourth Amendment rights. The trial court concluded that although the encounter between appellant and the police initially was consensual,

> at least by the time the police officer directed him to get out of the car, it had become an investigative detention, probably before that time.
>
> When the police officer walked up to the car in uniform and made the gesture, which the police officer characterized as a wave, I think could be more reasonably interpreted to have been a gesture to halt or stay where you are, as the police officer demonstrated, I would view that within the context to be sort of a tactical approach that the police officers had adopted to approach the car.
>
> The way they did it was a calculated way which would, I think, fairly be objectively construed to have been designed to limit the movement of the car and limit the movement of the

- 5 -

> occupants of the car and would have been so perceived by the occupants.
>
> All that said, he was at least subjected to an investigative detention when he was told to get out of the car.

The trial court further concluded that at the time appellant was detained by the police, the officers had sufficiently corroborated the anonymous tip to provide them with reasonable suspicion to justify the stop.

Encounters between the police and citizens "generally fall into one of three categories." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

> First, there are consensual encounters that do not implicate the Fourth Amendment. Iglesias [v. Commonwealth], 7 Va. App. [93,] 99, 372 S.E.2d [170,] 173 [(1988)]. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1939). Finally, there are "highly intrusive, full-scale arrests" or searches that must be based upon probable cause to believe that the suspect has committed a crime. Id.; see also Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 746-47 (1995).

Id.

For purposes of the Fourth Amendment, an encounter ceases to be consensual and "'a person is "seized" only when, by means of physical force or show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.'" Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647 (1992) (quoting United States v. Mendenhall, 446 U.S. 544, 553 (1980)).

> "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the

public and the police cannot, as a matter of law, amount to a seizure of that person."

Id. at 196, 413 S.E.2d at 648 (quoting Mendenhall, 446 U.S. at 554-55).

Whether a suspect was seized in violation of his Fourth Amendment rights

presents a mixed question of law and fact that we review de novo on appeal. In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.

Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 145 (2008) (citations omitted).

There is good reason for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated. Moreover, they involve consideration of nuances such as tone of voice, facial expression, gestures and body language seldom discernable from a printed record. The controlling inquiry is the effect of such matters on a reasonable person in the light of all the surrounding circumstances.

Malbrough v. Commonwealth, 275 Va. 163, 171, 655 S.E.2d 1, 5 (2008) (deferring to trial court's finding of fact defendant was not detained for Fourth Amendment purposes).

The evidence at the suppression hearing proved the police officers approached the Altima in a manner intended to limit the movement of the occupants of the vehicle. Sullivan raised his hand in a gesture both appellant and Ferozpuri interpreted as an indication they were not free to leave. At the suppression hearing, the trial court observed Sullivan's demonstration of the officer's movement and decided it was "more reasonably interpreted to have been a gesture to halt or stay where you are." The police officer then told appellant to exit the vehicle. The evidence thus supports the trial court's conclusion that appellant's freedom of movement was restrained and he was detained for Fourth Amendment purposes when the police ordered him from the car. Accordingly, we must grant this factual finding deference on appeal.

A lawful investigative detention must be based upon "reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity . . . ." McGee, 25 Va. App. at 202, 487 S.E.2d at 263. "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality of the circumstances – the whole picture.'" Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). In the context of a tip provided to the police by an anonymous informant, "the informant's veracity or reliability, and the basis of his or her knowledge are 'highly relevant' factors in the overall totality of the circumstances analysis." Harris, 276 Va. at 695, 668 S.E.2d at 145 (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).

> An anonymous tip has a relatively low degree of reliability, requiring more information to sufficiently corroborate the information contained in the tip. See [Florida v.] J.L., 529 U.S. [266,] 270 [(2000)]; Jackson [v. Commonwealth], 267 Va. [666,] 673, 594 S.E.2d [595,] 599 [(2004)]. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" J.L., 529 U.S. at 270 . . . .
>
> The indicia of reliability of an anonymous tip may be bolstered when the tipster provides predictive information, which the police can use to test the tipster's basis of knowledge and credibility. Jackson, 267 Va. at 676, 594 S.E.2d at 600. However, for such predictive information to bolster the tipster's basis of knowledge or credibility, the information must relate to the alleged criminal activity. Providing information observable or available to anyone is not predictive information and can only "help the police correctly identify the person whom the tipster [meant] to accuse." J.L., 529 U.S. at 272. An anonymous call that provides no predictive information leaves the police without a means to test the tipster's knowledge or credibility. J.L., 529 U.S. at 271.

Harris, 276 Va. at 695-96, 668 S.E.2d at 145-46 (finding anonymous tip that defendant was driving intoxicated in a particular location not sufficiently reliable or predictive of criminal behavior to justify a stop).

In <u>Jackson</u>, 267 Va. at 669, 594 S.E.2d at 596, the Supreme Court of Virginia considered whether information provided by an anonymous caller was sufficiently corroborated to provide the police with reasonable suspicion to justify an investigatory stop. In that case, police units were dispatched to the intersection of 34th Street and Jefferson Avenue in Newport News based upon an anonymous tip that three African-American males in a white Honda were disorderly and one of them brandished a firearm. <u>Id.</u> at 670, 594 S.E.2d at 597. About five minutes after receiving the report, an officer saw a white Honda with three African-American males inside it at the intersection the informant had named. The officer stopped the vehicle as it was pulling out of a gas station. <u>Id.</u> When the police shone a light inside the vehicle, they saw a bulge under the shirt of the defendant, who was a passenger in the car. <u>Id.</u> at 671, 594 S.E.2d at 597. The police ordered the defendant from the car and seized a firearm from his waistband. <u>Id.</u> The Court found the anonymous tip contained no indicia of the informant's veracity and failed to contain predictions about the defendant's future behavior. Thus, the Court concluded, the tip lacked sufficient indicia of reliability to justify the stop. <u>Id.</u> at 681, 594 S.E.2d at 603.

In this case, the informant did not provide the police with his identity or the basis for his knowledge. Thus, the informant did not subject himself to possible arrest if the information he gave Fernald proved false. <u>See</u> Code § 18.2-461. The informant told Fernald a Caucasian man and a woman were sharing a motel room at the Best Value Inn, where they possessed drugs and firearms. The informant indicated the pair was traveling in a gray Altima with large chrome wheels. The tip did not predict the couple's future movements. The police later saw appellant and Ferozpuri get into a gray Altima at the Best Value Inn and drive to another motel. The officers did not observe appellant or Ferozpuri attempt a drug transaction or engage in criminal behavior. Thus, the anonymous tip did not provide a sufficient basis to justify the police in

- 9 -

detaining appellant and ordering him from the vehicle. See Harris, 276 Va. at 694, 668 S.E.2d at 145.

B. Suppression of the Evidence

"Ordinarily, evidence obtained as the result of an unlawful search [or seizure] is subject to suppression under the exclusionary rule." Commonwealth v. Jones, 267 Va. 532, 535, 593 S.E.2d 204, 206 (2004). In determining whether evidence is derivative of the illegal act and, therefore, barred as "fruit of the poisonous tree," the question is "'whether[,] granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. 471, 488 (1963) (quoting John M. Maguire, Evidence of Guilt 221 (1959)).

> This attenuation principle should not be confused with a mere "but for" standard of causation – which, if used for this purpose, would suppress evidence "simply because it would not have come to light but for the illegal actions of the police." Wong Sun, 371 U.S. at 488. Instead, "a finding with respect to attenuation . . . can only be made after consideration of all the circumstances of the case." United States v. Wellins, 654 F.2d 550, 554 (9th Cir. 1981). This necessarily requires a "careful sifting of the unique facts and circumstances of each case." Schneckloth [v. Bustamonte], 412 U.S. [218,] 233 [(1973)]. There being no fixed formula, courts consider the amount of time between the illegal action and the acquisition of the evidence, the presence of intervening circumstances . . ., and the purpose and flagrancy of the official misconduct. United States v. Seidman, 156 F.3d 542, 548 (4th Cir. 1998).

Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218-19 (2005) (*en banc*).

We agree with appellant that the $871 seized from appellant's person in the search incident to his arrest was derivative of his unlawful detention by the police and should have been suppressed. Likewise, appellant's statement to the police that selling drugs was his sole source of income was obtained in exploitation of the unlawful detention. However, none of the other

evidence against appellant was subject to the exclusionary rule as a result of the unlawful detention.

### 1. Appellant's Confession Letter

Appellant wrote a letter confessing his guilt of possessing the drugs, guns, and money found in the car, the motel room, and the safety deposit box. Appellant wrote the statement on his own, without the involvement of the police, after he had been advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and was appointed counsel to represent him.

"[A] voluntary confession can be an act of free will sufficient to purge the taint of an earlier illegal [detention]." Kyer, 45 Va. App. at 484 n.5, 612 S.E.2d at 219 n.5. See also New York v. Harris, 495 U.S. 14, 21 (1990). The Commonwealth did not obtain appellant's confession through exploitation of unlawful conduct on the part of the police. Accordingly, the exclusionary rule did not apply to appellant's written confession.

### 2. Evidence Seized from the Vehicle

The Fourth Amendment

> "protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). In order to effectuate the fourth amendment guarantees, the Supreme Court established the "exclusionary rule" which prevents evidence obtained in violation of the fourth amendment from being used against an accused. Reynolds v. Commonwealth, 9 Va. App. 430, 435, 388 S.E.2d 659, 662-63 (1990); see also Walls v. Commonwealth, 2 Va. App. 639, 651, 347 S.E.2d 175, 182 (1986). Yet, the protections of the exclusionary rule are only available to individuals whose fourth amendment rights have been violated. Rakas [v. Illinois], 439 U.S. [128,] 134 [(1978)]; accord United States v. Salvucci, 448 U.S. 83, 85 (1980); McCoy v. Commonwealth, 2 Va. App. 309, 311, 343 S.E.2d 383, 385 (1986). Thus, before affording the exclusionary rule protections to a defendant, a court must determine whether, based on the totality of the circumstances, the defendant "objectively had a reasonable expectation of privacy at the time and place of the disputed search." McCoy, 2 Va. App. at 311, 343 S.E.2d at 385. The party asserting fourth amendment rights has the burden of proving the government conducted an illegal search of a place where that party had a legitimate expectation of privacy.

Commonwealth v. Ealy, 12 Va. App. 744, 750-51, 407 S.E.2d 681, 685 (1991). Regarding a motor vehicle, an accused has standing to object to a search if he is the "owner or in lawful possession of it." Hardy v. Commonwealth, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994). See also Bell v. Commonwealth, 264 Va. 172, 190, 563 S.E.2d 695, 708 (2002) (defendant had no standing to challenge the search of a car he did not own and was not authorized to have in his possession at the time of the search).

In Rakas, the police stopped a getaway car after a reported robbery. Four people were removed from the vehicle. Inside the glove compartment the police found a box of ammunition, and a shotgun was underneath the front passenger seat. The defendants in the case, who had been passengers in the vehicle, asserted no ownership interest in the vehicle or the seized evidence. The United States Supreme Court found that, under such circumstances, the defendants lacked standing to challenge the search of the vehicle. Id. at 148-50.

Here, the police initially observed appellant as a passenger in the gray Altima. Ferozpuri was the driver. At no point in the proceedings did appellant assert any ownership interest in the Altima. At one of the suppression hearings, Ferozpuri referred to the Altima several times as her own vehicle. Considering these circumstances, appellant failed to demonstrate that he had a reasonable expectation of privacy in the vehicle to justify an assertion that the search of the car violated his Fourth Amendment rights. Thus, the firearm and the drugs seized from the vehicle were not subject to exclusion.

### 3. Ferozpuri's Statement

After she was arrested and advised of her Miranda rights, Ferozpuri made a statement indicating there were guns and drugs in the motel room at the Best Value Inn. Appellant provides this Court with no authority, and we are aware of none, permitting him to assert vicariously any violation of constitutional rights that would result in the exclusion of Ferozpuri's statement from

evidence at his trial.  Appellant has thus failed to comply with Rule 5A:20(e), requiring an appellant to provide this Court with authority to support the positions he advances on appeal.  Nor did appellant preserve this argument for appellate review by raising it the trial court.  See Rule 5A:18.  Therefore, we need not consider any contention that Ferozpuri's statement should have been suppressed in the trial court.

### 4.  The Bribe Attempt

During questioning by the police, appellant offered one of the officers $20,000 to "get [him] out of this mess."  Appellant's attempt to bribe a police officer constituted a violation of Code § 18.2-438, which makes it a Class 4 felony to "corruptly give, offer or promise to any . . . police officer . . . any gift or gratuity, with intent to influence his act, . . . decision or judgment on any matter, question, cause or proceeding, which is or may be then pending . . . ."

We have held that "[t]he exclusionary rule does not . . . prohibit testimony describing the defendant's own illegal actions following an unlawful search or seizure."  Brown v. City of Danville, 44 Va. App. 586, 599, 606 S.E.2d 523, 530 (2004).  "[I]f a person engages in new and distinct criminal acts in response to unlawful police conduct, the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own actions, is admissible."  Id. at 600, 606 S.E.2d at 530.  Moreover, in cases where a defendant has attempted to bribe a police officer following an unlawful arrest, "the courts have consistently held that the evidence of the attempted bribe – i.e., the statements of the person in making the bribe offer – is admissible notwithstanding" the prior unlawful conduct by the police.  6 Wayne R. LaFave, Search and Seizure § 11.4(j) (4th ed. 2004).  See, e.g., People v. Puglisi, 380 N.Y.S.2d 221, 222-23 (N.Y. App. Div. 1976) (where police lacked reasonable suspicion to stop the defendant, yet arrested him for possessing a gun, defendant's

subsequent offers to bribe police officers were admissible).  Thus, appellant's statement

attempting to bribe the police officer with $20,000 was not subject to suppression.

II.

Appellant challenges the trial court's decision to deny the motion to suppress the

evidence seized from Room 232 pursuant to a search warrant.  Appellant argues the evidence

seized pursuant to the warrant constituted "fruit of the poisonous tree," namely his unlawful

detention by the police.

The affidavit supporting the search warrant for the motel room contained the following

facts:

> On 9-23-06 Detective Fernald received information from a citizen that a white female and a white male were in possession of crack cocaine and various firearms located at the motel of the Best Value Inn.  The address for the Best Value Inn is 4202 Inn Street[,] Triangle[,] Virginia, 22172.  The citizen also stated they drove a silver/gray Nissan Altima with large chrome wheels.  The citizen also stated they make their narcotic sales away from the motel room but drive the Nissan to there [sic] customers.

> On 9-23-06 Officer Smith and I drove by the Best Value Inn and observed a white female and male enter a silver/gray Nissan Altima with large chrome wheels.  We followed the vehicle onto Route 95 north bound. . . .  The vehicle pulled into the parking lot of the Super 8 motel located at Route 234 and Route 1.  The vehicle parked backwards in a parking space located at the Super 8 motel.  I walked up to the vehicle and made contact with Mr. Stout who was in the passenger's seat.  I asked Mr. Stout where he was coming from and he stated Triangle.  I stated where in Triangle and he stated his residence at the Best Value Inn.  Mr. Stout stated he currently lives at the Best Value Inn.  I asked for Mr. Stout to step out of the vehicle and when he did so, I observed a small black gun located on the floor in the passenger's wheel well.  Mr. Stout was arrested for a Concealed Firearm.  In searching the vehicle incident to arrest three baggies of Crack Cocaine were located in the vehicle.

> The driver, Mrs. Ferozpuri was read her Miranda rights. She stated there were guns and drugs located in there [sic] motel room located at the Best Value Inn.

- 14 -

> I spoke to Terri Johnson who is the night clerk for the Best
> Value Inn and she stated Room 232 is registered to Marc Stout.

The affidavit thus did not contain any reference to appellant's possession of $871 and his statement regarding his vocation as a drug dealer, the only evidence that should have been suppressed as derivative of the unlawful detention of appellant by the police. Accordingly, we need not further consider appellant's argument the search warrant was obtained based upon tainted evidence.

Appellant also argues the search warrant for Room 232 was not supported by probable cause. To constitute probable cause for a search warrant,

> "the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). An affidavit must provide a nexus between the contraband sought and the place to be searched pursuant to the warrant. Janis [v. Commonwealth], 22 Va. App. [646,] 652, 472 S.E.2d [649,] 652 [(1996)]. Thus, to support probable cause for a warrant to search a residence, an affidavit must establish, with a fair probability, a link between contraband and the residence to be searched.

Sowers v. Commonwealth, 49 Va. App. 588, 596, 643 S.E.2d 506, 510 (2007).

Considering the totality of the circumstances, the affidavit was sufficient to establish a nexus between Room 232 and drugs. The magistrate was provided the sworn statement of a police officer that an informant had reported drugs and guns were in Room 232 and that the occupants of the room were selling narcotics away from the room. Thereafter, Sullivan saw appellant and a female drive a vehicle that matched the description provided by the informant from the Best Value Inn to the Super 8 Motel. An encounter with appellant revealed that he possessed a gun, and the police subsequently found drugs in the car. The female driver of the vehicle admitted there were guns and drugs in their motel room at the Best Value Inn. Investigation later revealed Room 232 at the Best Value Inn was registered to appellant.

Therefore, the trial court did not err in denying appellant's motion to suppress the evidence seized from Room 232 pursuant to the search warrant.

III.

Appellant contends the affidavit for the safety deposit box search warrant contained tainted evidence and did not provide probable cause for the search. However,

> [i]t is well established that "[t]he inclusion of tainted evidence does not invalidate a search warrant," United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993) (citing United States v. Whitehorn, 813 F.2d 646, 649 (4th Cir. 1987)), and suppression is not required "if, excluding the illegally obtained information, probable cause for the issuance of the warrant could still be found." United States v. Apple, 915 F.2d 899, 910 (4th Cir. 1990)[.]

Williams v. Commonwealth, 26 Va. App. 612, 619, 496 S.E.2d 113, 116 (1998). Because evidence obtained during an unlawful search or seizure "may not be considered to support [a] search warrant subsequently obtained," the court, in determining the validity of the warrant, must "determine whether, when that evidence is excluded from the application for the warrant, probable cause to support the warrant still existed." United States v. Moses, 540 F.3d 263, 271 (4th Cir. 2008), cert. denied, 129 S. Ct. 1640 (2009).

Excluding appellant's statements to the police that he supported himself by selling drugs, see id., Fernald averred in the affidavit:

> On September 24, 2006, at 0243 hours, the Prince William County Police Department executed a narcotics search warrant for Possession with Intent to Distribute Schedule II Narcotics (Cocaine) at the Best Value Inn at 4202 Inn Street, Triangle, VA on hotel room number 232.
>
> During the execution of the search warrant, approximately four ounces of cocaine, both crack and powder were recovered in the room along with scales, packaging materials, and $3511.00 in US currency. Marc Joseph Stout, who was arrested for Possession with Intent to Distribute Cocaine was Mirandized at the East District Station, and agreed to speak with Detective Bryan Kelly and I. . . . During the interview with Detective Kelly Mr. Stout

- 16 -

stated to him, "Dude, I'll give you twenty grand right now to get me out of this mess." Based upon my training, knowledge and experience as a Street Crimes/Narcotics Detective, I have found that persons dealing with narcotics conceal records and document that assist the drug trade, such as "owe sheets" which documents drug transactions inside safety deposit boxes. Inside these safety deposit boxes persons in the narcotics trade also conceal money associated with the illegal sale of narcotics because there is no record of deposit and there is no record of existence.

Appellant contends the search warrant was invalid because the affidavit provided an insufficient nexus between him and the items sought in the search. The affidavit stated that appellant had been arrested for possessing cocaine with the intent to distribute it and drugs had been found in his motel room. Other evidence found in the motel room tended to prove appellant was in the business of selling drugs. Appellant offered a police officer a large sum of money, more than the cash found in the motel room, to help him avoid prosecution. In Fernald's experience, those involved in narcotics distribution use safety deposit boxes to hide evidence of their enterprise, including documents and cash. These facts and circumstances were sufficient to provide probable cause that evidence of appellant's drug dealing could be found in a safety deposit box.

Appellant also contends the affidavit did not provide a sufficient nexus between him and the particular safety deposit box the police wanted to search. We agree that the affidavit contained no information to connect appellant with safety deposit box number 91 at a Wachovia Bank branch in Dale City. However, even assuming *arguendo* the search warrant affidavit was deficient in this regard, the trial court was not necessarily required to suppress the evidence seized during the search. See Anzualda v. Commonwealth, 44 Va. App. 764, 779, 607 S.E.2d 749, 757 (2005) (*en banc*).

> Evidence seized pursuant to a warrant should be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." United States v. Leon, 468 U.S. 897, 918 (1984). "The exclusionary rule is designed to deter

- 17 -

police misconduct rather than to punish the errors of judges and magistrates." Janis v. Commonwealth, 22 Va. App. 646, 653, 472 S.E.2d 649, 653, aff'd en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996) (citation and internal quotation marks omitted). "The premise for the good faith exception lies in the belief that when officers rely in good faith upon a warrant subsequently quashed for lack of probable cause, suppressing the evidence will have no deterrent effect." Marc Zamsky, Criminal Procedure: Inconsistent Application of Good Faith, 64 Temp. L. Rev. 801, 816 (1991)[.]

Adams v. Commonwealth, 48 Va. App. 737, 746, 635 S.E.2d 20, 24 (2006), aff'd, 275 Va. 260, 657 S.E.2d 87 (2008). Nonetheless, the "good faith" exception does not apply

"(1) [w]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

Sowers, 49 Va. App. at 602, 643 S.E.2d at 513 (quoting Colaw v. Commonwealth, 32 Va. App. 806, 811, 531 S.E.2d 31, 33 (2000)). On appeal, "we can, and should, 'look to the totality of the circumstances including what [the executing police officers] knew but did not include in [the] affidavit' when conducting the good-faith analysis." Adams, 275 Va. at 270, 657 S.E.2d at 95 (quoting United States v. Martin, 833 F.2d 752, 756 (8th Cir. 1987)).

Appellant contends the good faith exception did not apply because the warrant was based upon an affidavit so deficient that official belief in it was unreasonable, the third circumstance noted above. However, when coupled with other information known to the police, the affidavit "contained some facts that could lead to the inference" that money or documents related to drug trafficking could be found in safety deposit box number 91. Sowers, 49 Va. App. at 604, 643 S.E.2d at 514. The police had found the safety deposit box key among appellant's belongings. The police traced the key to the Wachovia Bank safety deposit box registered to appellant and Ferozpuri. Cocaine was found in the gray Altima at the time of appellant's arrest. In appellant's

motel room the police found more drugs, firearms, items used in drug distribution, and cash.

After his arrest, appellant offered a police officer a $20,000 bribe to "get [him] out of this mess."

Moreover, in Fernald's experience, drug dealers were known to keep money and other items

associated with drug trafficking inside safety deposit boxes.

Under these circumstances, a reasonable police officer could have believed that a warrant

to search the safety deposit box was valid. The affidavit was not so lacking in probable cause as

to render official belief in the warrant objectively unreasonable, and the good faith exception

prevented application of the exclusionary rule. See id. at 603, 643 S.E.2d at 513. Accordingly,

the trial court did not err in denying the motion to suppress evidence seized from the safety

deposit box pursuant to the search warrant.

IV.

Appellant argues the trial court erred in denying his motion to suppress the evidence

seized pursuant to the warrants because the police violated the dictates of Franks. In Franks, the

United States Supreme Court stated that

> where the defendant makes a substantial preliminary showing that
> a false statement knowingly and intentionally, or with reckless
> disregard for the truth, was included by the affiant in the warrant
> affidavit, and if the allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request. In the event that at that
> hearing the allegation of perjury or reckless disregard is
> established by the defendant by a preponderance of the evidence,
> and, with the affidavit's false material set to one side, the
> affidavit's remaining content is insufficient to establish probable
> cause, the search warrant must be voided and the fruits of the
> search excluded to the same extent as if probable cause was
> lacking on the face of the affidavit.

Franks, 438 U.S. at 155-56. Thus,

> [t]o obtain suppression of the fruits of a search under Franks, a
> defendant must establish that the affidavit supporting the search
> warrant contained a deliberate falsehood or omission that was
> made with reckless disregard for the truth, that the falsehood or

omission was made by a police officer, and that the falsehood or omission negated the basis upon which the probable cause determination was made.

Gregory v. Commonwealth, 46 Va. App. 683, 694, 621 S.E.2d 162, 167-68 (2005).

At the hearing upon appellant's Franks motion, Detective Brian Kelly testified he was present when Fernald received the anonymous tip on September 23, 2006. Fernald told Kelly the suspects were a white male named "Marc" and his girlfriend, who was a white female, and there was also "a kid."

Fernald testified that after appellant's preliminary hearing, Fernald reviewed his report concerning the incident and then recalled receiving more information from the anonymous caller than he previously had revealed. Fernald said the informant told him that the male suspect was named Marc and the female with him was his girlfriend. Fernald said he passed along this information to Sullivan. In addition, Fernald recalled after the preliminary hearing that Sullivan had telephoned him to ask if the drug sales were allegedly taking place at the Best Value Inn or at another location.

Detective Kelly further testified that he questioned Ferozpuri after her arrest. Kelly told Ferozpuri he was in the process of obtaining a search warrant for her motel room where she had said she was staying. Eventually, Ferozpuri admitted that her young son was in the room with appellant's brother. She stated there were two loaded weapons in the room, and she described the location of the firearms. When Kelly asked Ferozpuri where the drugs were located, she said she was unable to describe the type or the amount of the drugs.

Ferozpuri testified that she told Kelly she did not know anything about the cocaine or guns in the room. However, when Kelly asked about a gun that was between the beds and one in the closet, she nodded her head.

- 20 -

Under the Franks standard, appellant was required to establish by a preponderance of the evidence that Sullivan or Fernald either intentionally or recklessly misrepresented the truth in the affidavits pertaining to the presence of incriminating evidence in the motel room or safety deposit box. Despite inconsistent testimony regarding whether the informant supplied Fernald with the name "Marc" and whether Ferozpuri admitted there were guns and drugs in the motel room, the trial court found the officers' explanations to be credible. Thus, appellant presented no evidence the officers intentionally or recklessly misstated facts in the affidavits in order to obtain the search warrants. Accordingly, the trial court did not err in denying the motion to suppress based upon Franks.

CONCLUSION

Appellant entered conditional guilty pleas pursuant to Code § 19.2-254, which provides in pertinent part:

> With the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a felony case, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

The trial court's error in denying the motion to suppress the money found on appellant's person and his statements to the police following his arrest pertained to the charges of possessing cocaine with the intent to distribute and the simultaneous possession of drugs and a firearm. However, the evidence that should have been suppressed had no relevance to his conviction of possessing a firearm after conviction of a felony, so he did not "prevail[] on appeal" with respect to that charge. See Code § 19.2-254. Accordingly, we affirm appellant's conviction of possessing a firearm after conviction of a felony, reverse appellant's convictions of possessing

- 21 -

cocaine with the intent to distribute and simultaneously possessing cocaine and a firearm, and

remand the matter to the trial court for further proceedings pursuant to Code § 19.2-254.[3]

Affirmed in part,
reversed in part,
and remanded.

---

[3] In Glenn v. Commonwealth, 48 Va. App. 556, 577-87, 633 S.E.2d 205, 216-21 (2006), a divided panel of this Court found it inappropriate to conduct a harmless error analysis in the context of an appeal following a conditional guilty plea. However, upon review *en banc* and appeal to the Supreme Court of Virginia, the trial court's decision to deny the motion to suppress was upheld on the merits, thus mooting the panel's discussion regarding harmless error. See Glenn v. Commonwealth, 49 Va. App. 413, 423 n.3, 642 S.E.2d 282, 287 n.3 (2007) (*en banc*), aff'd, 275 Va. 123, 137-38, 654 S.E.2d 910, 917 (2008). In this case, we do not consider whether a harmless error analysis is proper, as this issue was not raised and briefed by the parties.